**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**REUBEN AVENT,**

                     **Plaintiff,**           19-cv-10907 (JGK)

        - against -              **MEMORANDUM**
                                                    **OPINION AND ORDER**
**PROGRESSIVE CASUALTY INSURANCE**
**COMPANY; STEVEN JONES; DANIELLE**
**BARROR; UNKNOWN COMPANY**
**REPRESENTATIVES,**

                      **Defendants.**
────────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The _pro se_ plaintiff Reuben Avent brings this complaint against the defendants, Progressive Casualty Insurance Company ("Progressive"), and its current and former employees, Steven Jones, Danielle Barror, and unknown company representatives. Mr. Avent's Complaint includes seven causes of action: a claim pursuant to 42 U.S.C. § 1981 for alleged discrimination against him on the basis of race, three claims pursuant to 42 U.S.C. § 1983 for alleged violations of Due Process and Equal Protection under the Fifth and Fourteenth Amendments of the United States Constitution, a breach of contract claim under New York and federal law, a fraud and unfair and deceptive business practices claim under New York law, and a civil rights claim under New York law. Progressive has moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule

of Civil Procedure 12(b)(6). For reasons explained below, the motion is **granted**.

I

The following facts are drawn from the Complaint ("Compl.") and are accepted as true for the purposes of this motion.

Mr. Avent is an African-American residing in New York, New York. Compl. at 2. In July 2017, Mr. Avent obtained insurance policies for both of his cars from Progressive. Id. ¶ 3. In February 2018, Mr. Avent reported a claim to Progressive after one of his cars malfunctioned. Id. ¶ 6. A Progressive representative, defendant Steve Jones, answered the call, provided a tow truck to take the vehicle to get assessed, and ultimately denied coverage for the claim. Id. ¶ 7. Progressive subsequently reassessed the claim and provided coverage for certain items. Id. ¶ 8. Progressive also raised Mr. Avent's insurance premiums. Id. ¶ 9. Mr. Avent alleges that the defendants separated the single incident claim into three separate claims in order to justify raising Mr. Avent's insurance premiums. Id. ¶ 10.

In May 2018, Mr. Avent's car door was hit by a truck in a parking lot, causing $4,249.87 of damage. Id. ¶ 11. The driver of the truck was Caucasian and was also insured by Progressive. Id. ¶ 13. A Progressive representative, defendant Danielle Barror, held Mr. Avent liable for the accident because he opened

his door in a known traffic area. Id. ¶ 14. After this accident, Progressive again raised Mr. Avent's insurance premium. Id. ¶ 16. In December 2018, Progressive canceled Mr. Avent's insurance policy for nonpayment, and when he reinsured his cars, his insurance premium tripled. Id. ¶ 17. Mr. Avent had trouble keeping up with the payments and made one late payment. Id. ¶ 18. Progressive then canceled the new policy. Id. ¶ 19. Unable to obtain any other insurance, Mr. Avent was forced to leave his job and home in upstate New York and relocate to New York City. Id. ¶ 22.

Mr. Avent alleges that various aspects of the defendants' conduct were motivated or marked by racial animus. Mr. Avent alleges that the defendants held in favor of the white truck driver on the basis of race. Id. ¶ 15. Mr. Avent alleges that "every white person similarly situated" to him "never ever received a liability finding." Id. ¶ 11(a). As a result, Mr. Avent asserts, "defendants cannot . . . refute any contention of race being the motivating factor." Id. ¶ 11(b). Mr. Avent alleges that because of his race, Progressive disregarded various mitigating factors that presumably would have averted the premium hikes and the cancellations he was subjected to. Id. ¶¶ 16-17. When Mr. Avent contacted Progressive and explained that he needed his car due to lack of public transportation, his phone calls ended "in a disparaging and demeaning manner by the

defendants." Id. ¶ 20. In these conversations, defendants made "disparaging remarks of his race." Id. ¶ 21.

Mr. Avent is seeking over $19 million in compensatory damages for pain and suffering and loss of employment, over $32 million in punitive damages, and an injunction compelling Progressive to reimburse him for the higher premiums, to re-instate his insurance, to clear his insurance history, and to grant him additional insurance protections.

## II

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1] The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co.

5

Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

### III

#### A

Progressive moves to dismiss the claims brought pursuant to 42 U.S.C. § 1983—the Fourth, Firth, and Sixth Causes of Action in the Complaint—because Progressive is not a state actor.

Section 1983 provides that anyone who "under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The terms of Section 1983 "make plain two elements that are necessary for recovery." Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970). The first element is "that the defendant has deprived [the plaintiff] of a right secured by the Constitution and laws of the United States." Id. The second element is "that the defendant deprived him of this constitutional right . . . under color of law." Id.

"The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999). "State action requires both an alleged constitutional deprivation caused by the exercise of

6

some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and that the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id. Where a private party acts "with knowledge of and pursuant to [a] state statute . . . the allegedly unconstitutional conduct [must also be] fairly attributable to the State." Id.

In cases involving private businesses subject to extensive state regulation, "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." Id. at 52. Instead, private businesses "will not be held to constitutional standards unless there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the latter may be fairly treated as that of the State itself." Id. Such nexus exists when, through the private entity, the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State," Blum v. Yaretsky, 457 U.S. 991, 1004 (1982), or "the private entity has exercised powers that are traditionally the exclusive prerogative of the State." Id. at 1005.

In this case, Progressive is not a state actor within the meaning of Section 1983. Although it is an insurance business

7

heavily regulated by the state, this alone does not by itself convert Progressive's conduct into State action. Sullivan, 526 U.S. at 52. Instead, Mr. Avent must plausibly allege that there is a "sufficiently close nexus between the State and the challenged action" of Progressive. Id. Mr. Avent has not done so in his Complaint. The challenged actions—Progressive's decisions to hold Mr. Avenue responsible for an accident, increase his insurance premium, and discontinue coverage—were in no sense alleged to occur due to the "coercive power or . . . significant encouragement" of the State. Blum v. Yaretsky, 457 U.S. at 1004. Nor has Progressive "exercised powers that are traditionally the exclusive prerogative of the State." Id. at 1005. Instead, the events in the complaint "turn[ed] on . . . judgments made by private parties," id. at 1008, without any allegation that the State was responsible for those decisions. Such "[a]ction taken by private parties with . . . mere . . . acquiescence of the State is not state action." Sullivan, 526 U.S. at 52.

Accordingly, because the Complaint fails to allege that the defendants are state actors, the motion to dismiss the claims under Section 1983 is **granted**.

B

Progressive next argues that the Second Cause of Action in the Complaint pursuant to 42 U.S.C. § 1981 should be dismissed because Mr. Avent has not sufficiently pleaded a claim.

8

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). "A plaintiff alleging racial . . . discrimination . . . must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994). Additionally, the Supreme Court has recently held that to prevail on a Section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." Comcast

Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). Accordingly, it is insufficient merely to plead that race was a motivating factor in the discriminatory action. Id. at 1017-18.

Mr. Avent's Complaint does not meet this burden. While Mr. Avent is a member of a racial minority, and the alleged discrimination arguably concerned an activity protected by the statute—the making of an insurance contract with Progressive—Mr. Avent does not allege specific facts that would permit the Court to draw a plausible inference that there was a discriminatory motive and that race was a but-for cause of Progressive's actions. With respect to motive, Mr. Avent makes a series of conclusory allegations, namely that "every white person similarly situated . . . never ever received a liability finding," Compl. ¶ 11(a); that "this disparate treatment was a part of a larger design of defendant's [sic] custom to speak disparately to plaintiff over the phone and another aspect of defendants [sic] attempts to deny plaintiff full benefits of insurance and civil rights laws," id. ¶ 14; that "defendants used race and an Animus bias to come to such conclusions in favor of the white truck driver," id. ¶ 15; and that "defendants used this disparaging treatment against only African Americans," id. ¶ 18. Such conclusory statements, without "any specific factual support for his claim of a racial motivation" render the

complaint a "naked allegation" of racial discrimination, Yusuf v. Vassar Coll., 35 F.3d 709, 714 (2d Cir. 1994), and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. The only allegation that could support an inference of discriminatory motive, that the defendants made "disparaging remarks of his race," Compl. ¶ 21, lacks any detail about the contents of the alleged remarks, and therefore does not allow the Court to determine if an inference of discriminatory motive is plausible. Compare Payne v. Malemathew, No. 09-cv-1634, 2011 WL 3043920, at *3 n.4 (S.D.N.Y. July 22, 2011) (concluding that a complain that "sets forth not a single example of statements disparaging a protected class" failed to satisfy the Iqbal plausibility standard), with Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC, No. 11-cv-3327, 2013 WL 417406, at *10 (S.D.N.Y. Feb. 4, 2013) (inferring discriminatory intent where the plaintiff's Complaint contained detailed allegations of specific statements and conduct), and Hicks v. IBM, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) (inferring discriminatory intent from a series of racially derogatory comments detailed in the Complaint). Accordingly, the Complaint fails to "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf, 35 F.3d at 713.

Moreover, Mr. Avent has failed to plead that that race was a but-for cause of the defendants' conduct. See Comcast, 140 S. Ct. at 1019; see also Rubert v. King, No. 19-cv-2781, 2020 WL 5751513, at *6 (S.D.N.Y. Sept. 25, 2020) (adopting but-for causation in section 1981 claims at the pleading stage); Ikedilo v. Statter, No. 19-cv-9967, 2020 WL 5849049, at *9 (S.D.N.Y. Sept. 30, 2020) (same). Indeed, Mr. Avent's Complaint mentions legitimate, non-discriminatory explanations for defendants' actions. Specifically, Mr. Avent acknowledges that the defendants' adverse claims decision was based on the determination that he opened the door in a known traffic area, Compl. ¶ 14; that his premium rate was increased because he made several claims against the policy and because he allowed the policy to lapse, id. ¶¶ 9, 16, 17; and that Progressive terminated the policy after nonpayment, id. ¶ 17, 18. These benign explanations belie a plausible inference that race was a but-for cause of the defendants' conduct. See Rubert, 2020 WL 5751513, at *7 (reasoning that, in light of the but-for causation requirement in Section 1981 suits, the plaintiff's acknowledgement of sufficient, non-discriminatory reasons for the adverse treatment is determinative).

Accordingly, because Mr. Avent failed to allege facts that would permit the Court to infer discriminatory intent and that race was a but-for cause for the defendants' conduct, the motion

to dismiss his claim under Section 1981 is **granted** without prejudice to the plaintiff's ability to file an amended complaint.

C

With respect to the remaining claims, all brought under state law,[2] Progressive argues that the Court does not have diversity jurisdiction and it should decline to exercise supplemental jurisdiction absent federal question jurisdiction.

On questions of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). With regards to jurisdictional facts, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero), 600 F.3d 171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by the body of decisional law that has developed under Federal Rule of Civil Procedure 56. Kamen, 791 F.2d at 1011.

---

[2] The breach-of-contract claim in Count One purports to arise under both state and federal law. However, there is no federal law of contract. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

13

Pursuant to 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over state law claims when the amount in controversy exceeds the sum or value of $75,000 and there is complete diversity of citizenship among the parties. See Wash. Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126, 133 (2d Cir. 2020). Diversity of citizenship "does not exist unless each defendant is a citizen of a different State from each plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). "For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998). Domicile is a person's fixed home and principal establishment, and to which, whenever he is absent, the person intends to return. Id.

Alternatively, pursuant to 28 U.S.C. § 1367, federal courts can exercise supplemental subject matter jurisdiction over state law claims that derive from the same "common nucleus of operative fact" as the federal claims brought in the same action. Briarpatch Ltd., L.P. v. Phx. Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004). However, once the Court dismisses the federal claims, the Court may decline to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3); Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

Although Mr. Avent's Complaint alleges complete diversity, the disclosures submitted by Progressive—which the Court must

14

consider in deciding jurisdictional disputes—show that the individual defendants are or were last known to be residents of New York state, like the plaintiff. Felter Decl., Ex. A ¶ 5; Compl. at 2. And there is no basis in this case to conclude that the domiciles of the individual defendants differ from their residence. Accordingly, the Court does not have diversity jurisdiction over the state law claims. Additionally, because the Court has dismissed the federal claims brought in this action, it may decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." Kolari, 455 F.3d at 122 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "In the usual case in which all federal-law claims are eliminated before trial, the balance of [these] factors will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. 343 at 350 n.7. This is plainly the case here. After dismissing the federal claims, the Court's duty would be limited to considering state law claims. Such "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v.

15

Gibbs, 383 U.S. 715, 726 (1966). Furthermore, the pre-discovery stage of the litigation means that the factors of judicial economy, convenience, fairness, and comity point toward declining supplemental jurisdiction. See Page v. Oath Inc., No. 17-cv-6990, 2018 WL 1406621, at *4 (S.D.N.Y. Mar. 20, 2018), aff'd sub nom. Page v. United States Agency for Glob. Media, 797 F. App'x 550 (2d Cir. 2019).

Accordingly, the state law claims are **dismissed** without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

The motion to dismiss is **granted** without prejudice. The plaintiff may file an amended complaint within thirty (30) days of this opinion. If the plaintiff fails to file an amended complaint by that date, the federal claims will be dismissed with prejudice. If the plaintiff files an amended complaint, the defendant shall move or answer within twenty-one (21) days of receipt of the amended complaint. No pre-motion conference is necessary.

Furthermore, Progressive's motion for revision of the Court's Service Order (Docket No. 15) is **granted.**

16

The Clerk is directed to close Docket Nos. 13 and 15. The Clerk is direct to mail a copy of this Memorandum Opinion and Order to the pro se plaintiff.

**SO ORDERED.**

**Dated:** **New York, New York**
**January 19, 2021**     /s/ John G. Koeltl
                         **John G. Koeltl**
                         **United States District Judge**

17